**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

PERSONALIZED MEDIA     )
COMMUNICATIONS, LLC,    )
                             )     Civil Action File No.
      Plaintiff,          )     1:02-cv-824 (CAP)
                             )
v.                             )
                             )
SCIENTIFIC-ATLANTA, INC.    )
and POWERTV, INC.,       )
                             )
      Defendants.      )
_____)
AND RELATED           )
COUNTERCLAIMS AND    )
CROSS CLAIMS         )
_____)

**SCIENTIFIC-ATLANTA'S RESPONSE TO PLAINTIFF PMC'S MOTION
FOR RECONSIDERATION, OR, ALTERNATIVELY, FOR
<u>CERTIFICATION UNDER 28 U.S.C. § 1292(b)</u>**

Defendants Scientific-Atlanta and PowerTV, Inc. (collectively, "Scientific-Atlanta") file this brief in response to Personalized Media Communications, L.L.C.'s ("PMC") Motion For Reconsideration, Or, Alternatively, For Certification Under 28 U.S.C. § 1292(b).  (Doc. No. 550-2, "PMC's Motion").

**I.    <u>INTRODUCTION</u>**

Dissatisfied with the Court's carefully crafted order, PMC asks the Court to reconsider its ruling based on grounds that PMC previously has raised in its

numerous prior briefs, or on new grounds—the Seventh Amendment—that it could have raised but chose not to.   Neither of these approaches is sufficient for reconsideration because (1) the relevant law has not changed since the Court's November 18 Order; (2) PMC has not discovered any new evidence related to its prior motion; and (3) reconsideration is not required to correct any clear error or prevent injustice.   Because PMC has not met the prerequisites to file a motion for reconsideration, its motion should be denied without reaching the merits.

Even on the merits, however, PMC's arguments (both old and new) are simply wrong.   PMC has no Seventh Amendment right to a jury trial because Gemstar's claims are equitable, not legal, in nature.   Gemstar seeks a declaration, an injunction, and attorney's fees.   While PMC argues that Gemstar's claim for attorney's fees creates a right to a jury trial, the controlling authority holds the opposite.   Claims for attorney's fees do not give rise to a right to jury trial because they are "part of the historic equity jurisdiction of the federal courts."   *Wheeless v. Gelzer*, 765 F. Supp. 741, 743 (N.D. Ga. 1991) (quoting *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 166 (1939)).   The dollar amount of the fee request is immaterial.   The cases that PMC cites in its Motion are distinguishable because they involved claims for legal relief that would have historically been heard by courts of common law.   None of the cases cited by PMC holds that an equitable

claim can be decided by a jury merely because the claimant has made a request for attorney's fees.

Additionally, PMC's request for certification for an interlocutory appeal should be denied because PMC has not shown that the issue of whether Gemstar's claims for equitable relief should be decided by this Court "involves a controlling question of law as to which there is substantial ground for difference of opinion" under 28 U.S.C. § 1292(b).  The controlling authority holds that the Seventh Amendment does not apply to claims that only seek equitable relief, including attorney's fees (precisely the relief Gemstar seeks in this case), and the distinguishable cases raised by PMC do not raise a "substantial ground for difference of opinion."

The remainder of PMC's Motion is merely a rehash of its prior arguments that this Court already has rejected for good reason.  First, PMC repackages its previous arguments on Delaware contract law, while at the same time arguing in the alternative (for the first time) that Delaware law is not even controlling. PMC's argument regarding Delaware law is flawed because (as the Court previously recognized) the authority upon which it relies has been overruled by *Klair v. Reese,* 531 A.2d 219 (Del. 1987).

Second, PMC rehashes its prior arguments against bifurcation that the Court has already soundly rejected based on its inherent power to manage its own docket and its broad discretion to determine which claims should be tried separately. The Court's decision to separate the contract claim from the patent claims was correct because it is the most efficient course for all parties involved. In addition, the Court's interest in judicial economy and efficiency are best served by first determining whether (and to what extent if any) PMC even has the right to sue for the alleged patent infringement before the parties engage in expert discovery, dispositive motions, pretrial preparation, and trial on an exceedingly complex patent infringement case.

Consequently, PMC's Motion for Reconsideration provides no justification for the extraordinary relief requested and should be denied.

## II.   PMC HAS FAILED TO IDENTIFY ANY REASON WHY THE COURT SHOULD RECONSIDER ITS PRIOR ORDER

PMC has not shown why the Court should grant PMC's Motion for Reconsideration. The grant of such a motion is an "extraordinary remedy to be employed sparingly." *Diamond Crystal Brands, Inc. v. Wallace*, 563 F. Supp. 2d 1349, 1352 (N.D. Ga. 2008) (citations omitted). "A court should grant a motion for reconsideration only if: (1) there has been an intervening change in controlling law; (2) the party discovers new evidence; or (3) reconsideration is needed to

correct clear error or prevent manifest injustice." *Id.* "Parties … may not employ a motion for reconsideration as a vehicle to present new arguments or evidence that should have been raised earlier, introduce novel legal theories, or repackage familiar arguments to test whether the Court will change its mind." *Brogdon v. Nat'l Healthcare Corp.*, 103 F. Supp. 2d 1322, 1338 (N.D. Ga. 2000).

As a threshold matter, PMC's Motion for Reconsideration does not satisfy any of the above criteria to justify the extraordinary relief requested. PMC does not contend that there is any new evidence or an intervening change in law, and it has not shown clear error or manifest injustice.

PMC's motion also is improper because it raises new arguments that could have been raised earlier and rehashes previously rejected arguments. PMC does not provide any explanation for why it did not previously raise its new (and incorrect) argument that the Seventh Amendment applies to Gemstar's claims for equitable relief and attorney's fees. PMC's motion also repackages its previously-rejected arguments "to test whether the Court will change its mind" on a case management issue over which the Court has broad discretion. None of these arguments is appropriate for a motion for reconsideration, and the Court should deny PMC's motion.

### III.   PMC HAS NO SEVENTH AMENDMENT RIGHT TO A JURY TRIAL BECAUSE THE RELIEF SOUGHT IS EQUITABLE

#### A.   Legal Framework for the Seventh Amendment Analysis

The Seventh Amendment protects the right to a jury trial in civil lawsuits analogous to those "at common law."  To determine whether the Seventh Amendment right to a jury trial applies to a cause of action, courts analyze the nature of the action and the remedy sought.  First, courts compare the cause of action to 18th-Century actions brought in courts of England prior to the merger of the courts of law and courts of equity.  *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42 (1989).  The first stage of the Seventh Amendment inquiry looks to where the cause of action would have been brought—in a court sitting in equity or a court sitting at law—to obtain the remedy sought.  *Id.* at 44–45.  If the cause of action did not exist in 18th-Century England, the court looks to the most analogous cause of action of that time to determine whether it was typically brought at law or in equity.  *Chauffeurs, Teamsters & Helpers Local No. 391 v. Terry*, 494 U.S. 558, 565–66 (1990).

The second stage of the inquiry is whether the remedy sought is legal or equitable in nature.  *Granfinanciera*, 492 U.S. at 42.  The Supreme Court has held that this "second stage of this analysis is more important than the first."  *Id.* (citing *Tull v. U.S.*, 481 U.S. 412, 421 (1987)).  There is no right to a jury trial when a

plaintiff seeks purely equitable relief such as an injunction.  *CBS Broad., Inc. v. EchoStar Comm'ns Corp.*, 450 F.3d 505, 518 (11th Cir. 2006).

While requests for monetary damages are presumptively legal in nature, *Chauffeurs*, 494 U.S. at 571, a request for attorney's fees is an exception that is not a legal remedy.  *CBS Broad.*, 450 F.3d at 518 (citing *Whiting v. Jackson State Univ.*, 616 F.2d 116, 122 n.3 (5th Cir. 1980)).  The reason for this is historical. Requests for attorney's fees were historically within the exclusive realm of courts at equity and were not available at common law.  *See Wheeless v. Gelzer*, 765 F. Supp. 741, 743–44 (N.D. Ga. 1991) (holding that a claim for attorney's fees did not give rise to a jury trial even though the claim "is in fact compensatory in nature").  Thus, a request for attorney's fees does not transform an equitable claim into a legal cause of action.  *See CBS Broad.*, 450 F.3d at 518.

## B.  PMC Misapplies the First Stage of the Seventh Amendment Analysis

PMC's argument that "breach of contract was a prototypical action at law under the common law" (Mot. at 7) applies the wrong test for the "first stage" analysis under the Seventh Amendment.  The question is whether this particular action, if it existed in 18th-Century England, would have been brought at law or in equity—not whether breach-of-contract claims in the abstract are characterized as legal or equitable claims.  *See Granfinanciera*, 492 U.S. at 44–45.  The Supreme

Court has observed that whether a contract claim was historically brought in a court of law or a court at equity depended upon the relief sought:

> [S]uits for damages for breach of contract, for example, were suits at common law with the issues of the making of the contract and its breach to be decided by a jury; but specific performance was a remedy unavailable in a court of law and where such relief was sought the case would be tried in a court of equity with the facts as to the making and breach to be ascertained by the court.

*Atlas Roofing Co. v. Occupational Safety & Health Review Comm'n*, 430 U.S. 442, 458–59 (1977).

In the present case, the first stage of the analysis is not determinative because contract claims were historically brought in <u>both</u> courts of law and courts at equity. *See Phlo Corp. v. Stevens*, 62 Fed. Appx. 277, 381 (2d Cir. 2003) ("It is well established that an action for specific performance of a contract sounds in equity and therefore does not, by itself, trigger the Seventh Amendment right to a trial by jury.").

### C.   <u>The Relief Sought by Gemstar is Equitable</u>

Gemstar's contract claim must be tried to the Court because it involves equitable remedies, not remedies at law.  Specifically, Gemstar seeks the following remedies for its breach-of-contract claim:

- A declaration of Gemstar's rights to the Harvey Patents;

- An injunction that bars PMC from further prosecuting PMC's patent-infringement lawsuit; and

- Attorney's fees and costs related to its prosecution of this case.

Doc. No. 113 at 14.

PMC does not dispute that the claims for a declaration and an injunction involve equitable remedies that do not give rise to a Seventh Amendment right to a jury trial. PMC argues, however, that Gemstar's request for attorney's fees is an action for "money damages" that transforms Gemstar's breach-of-contract claim into a legal claim that carries a right to a jury trial. Mot. at 7–8. While PMC acknowledges that "Gemstar's identified damages consist entirely of attorney's fees," it argues that "all that matters" is that Gemstar seeks a "large money judgment." *Id.* at 8 n.3. This is contrary to controlling precedent, which holds that a request for attorney's fees does not give rise to a right to a jury trial where the claimant otherwise seeks purely equitable relief:

> EchoStar claims that the district court erred in striking EchoStar's jury trial demand days before trial. There is no right to a jury trial, however, when the plaintiffs seek purely equitable relief such as an injunction. A request for attorney's fees does not change that result. It therefore was not reversible error for the district court to strike EchoStar's demand.

*CBS Broad.*, 450 F.3d at 518 (internal citations omitted).

9

In addition, the controlling cases in this district hold that the Seventh Amendment does not apply to causes of action seeking equitable remedies, including attorney's fees.  For example, in *Griffin v. U.S. Postal Service*, the plaintiff sought an award of attorney's fees and a declaration that a union breached its duty of fair representation.  *Griffin v. U.S. Postal Service*, 635 F. Supp. 190, 194 (N.D. Ga. 1986).  The court held that there was no right to a jury trial because a declaration is a form of equitable relief and attorney's fees were not damages available at common law.  *Id.*

Similarly, the court in *Wheeless v. Gelzer* held that there was no right to a jury trial in an action to rescind ownership transfer agreements and recover attorney's fees.  *Wheeless v. Gelzer*, 765 F. Supp. 741, 743 (N.D. Ga. 1991).  In *Wheeless*, the plaintiff argued that the claim for attorney's fees was a claim for damages that afforded the plaintiff a right to a jury trial.  *Id.*  Rejecting this argument, the Court reasoned that the allowance of attorney's fees is "part of the historic equity jurisdiction of the federal courts."  *Id.* (quoting *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 166 (1939)).  The Court therefore held that the inclusion of a claim for attorney's fees with other claims that are solely equitable in nature did not entitle the parties to a jury trial under the Seventh Amendment.  *Id.* at 744.

Because Gemstar seeks only equitable relief (including attorney's fees) for its breach-of-contract claims, the Seventh Amendment does not apply and PMC is not entitled to a jury trial on those claims.  Contrary to PMC's argument, the dollar amount of the attorney's fees at issue does not change the nature of the equitable relief requested.  This Court should reject PMC's request for a jury trial for the same reasons as in the *CBS Broadcasting*, *Griffin*, and *Wheeless* cases.

**D.    The Caselaw Cited by PMC is Distinguishable**

Each of the cases cited by PMC is distinguishable because each involved claims for legal relief that would have historically been brought in a court of common law, not a court at equity.  None of the cases cited by PMC holds that a Seventh Amendment right to jury trial attaches merely because the claimant makes a request for attorney's fees.  For example:

- *Tull v. U.S.*, 481 U.S. 412, 420 (1987) (distinguishable because it involved a claim for statutory civil penalties and a money judgment for violation of the Clean Water Act);

- *Dairy Queen, Inc. v. Wood*, 369 U.S. 469 (1962) (distinguishable because it involved a claim for money damages for trademark infringement and a debt owed by contract);

- *Ross v. Bernhard*, 396 U.S. 531, 542 (1970) (distinguishable because it involved a negligence claim and "[t]he relief sought is money damages");

- *Stewart v. KHD Deutz of America Corp.*, 75 F.3d 1522, 1526–28 (11th Cir. 1996) (distinguishable because it involved "hybrid LMRA/ERISA" actions for money damages in the form of "compensatory damages

representing out-of-pocket expenditures incurred as a result of the decreased health benefits"); and

- *Simler v. Conner*, 372 U.S. 221, 223 (1963) (distinguishable because it involved a claim by a lawyer to collect fees for past services rendered to a client, which is unlike a claim for attorney's fees expended in the suit itself that is subject to the Seventh Amendment inquiry).

In addition, the caselaw upon which PMC relies to argue that Gemstar cannot withdraw its request for a jury trial without PMC's consent is inapplicable to the present case. Mot. at 14–15. As shown above, in a claim for attorney's fees, there is no right to jury trial to begin with. PMC cannot credibly argue that a party's demand for jury trial creates such a right where the Seventh Amendment does not.

Similarly, the cases that PMC cites to support its argument that "breach, causation, and damages" should be decided by a jury are inapplicable to the present case. Mot. at 11–13, 16–20. PMC's argument should be rejected because it depends on the incorrect assumption that there is a Seventh Amendment jury trial right on Gemstar's equitable claims to begin with. There is not.

### E.    PMC's Request for Certification for Interlocutory Appeal Should Be Denied

The Court should deny PMC's request for certification for interlocutory appeal because there is ample controlling authority, namely the *CBS Broadcasting*, *Griffin*, and *Wheeless* cases, to support the Court's decision to hear Gemstar's

contract claim.  As such, this case does not present a situation that "involves a controlling question of law as to which there is substantial ground for difference of opinion" under 28 U.S.C. § 1292(b).[1]  PMC's argument that certification for interlocutory appeal is appropriate simply because it involves a denial of a jury trial request is incorrect.[2]  *See, e.g.*, *Carugati v. INA Life Ins. Co. of N.Y.*, No. 97 C 4604, 1997 WL 695658, at *3 (N.D. Ill. Nov. 5, 1997) (granting defendant's motion to strike jury demand and denying plaintiff's request to certify order under § 1292(b) where the controlling precedent held that the plaintiff's claims were equitable in nature); s*ee also Howard v. Parisian, Inc.*, 807 F.2d 1560, 1566–67

---

[1]    Moreover, PMC did not properly preserve the Seventh Amendment issue for interlocutory appeal because PMC raised the argument for the first time in its motion for reconsideration.  *See Conn. Gen. Life Ins. Co. v. Zilka*, 56 Fed. Appx. 828, 829 (9th Cir. 2003) (finding that appellant waived arguments raised for the first time to the district court in a motion for reconsideration of the sanctions order on appeal).

[2]    PMC suggests that it seeks certification only on the issue of whether the Seventh Amendment applies to Gemstar's breach-of-contract claims.  Mot. at 25.  But elsewhere PMC's brief states that the Court's decision to bifurcate this case "is incorrect and would require reversal upon review for abuse of discretion."  Mot. at 22.  PMC's disagreement with the Court's case management approach is inappropriate for an interlocutory appeal.  7 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2392 (3d ed. 2009) ("[I]t so clearly is undesirable to have interlocutory review of these discretionary orders about the organization of the trial that interlocutory appeals should be permitted rarely, if at all.").  Thus, to the extent that PMC requests certification of the portion of the Court's order bifurcating the contract claim from the patent claims, PMC's request should be denied for this additional reason.

(11th Cir. 1987); *In re Apotex, Inc.*, 49 Fed. Appx. 92, 93 (Fed. Cir. 2002) (denying writ of mandamus on jury demand where the plaintiff only sought equitable relief).

In addition, the cases that PMC cites to argue that decisions involving the right to a jury trial "often warrant[] interlocutory appeal" are distinguishable from the present case.  The first three cited cases raised novel legal questions because they involved recently-enacted statutory causes of action that were unlike the actions available when the Seventh Amendment was adopted.  *See Lorillard v. Pons*, 434 U.S. 575, 577 (1978) (wrongful discharge claim in violation of the 1967 ADEA that sought reinstatement in addition to liquidated damages); *Lehman v. Nakshian*, 453 U.S. 156, 157–59 (1981) (wrongful discharge claim in violation of the 1974 Amendments to the ADEA); *Stewart v. KHD Deutz of America Corp*., 75 F.3d 1522, 1526–28 (11th Cir. 1996) (hybrid LMRA/ERISA claims that sought compensatory damages).  The final case relates to an appeal of a trial court's oral order that struck the plaintiff's otherwise valid jury-trial demand on the ground that counsel had made the case "extremely complicated."  *See Cotton v. Witco Chem. Corp.*, 651 F.2d 274 (5th Cir. 1981).  In contrast, the present case is similar to numerous prior controlling cases, including *CBS Broadcasting*, *Griffin*, and *Wheeless*, making the delay associated with interlocutory appeal unnecessary.

14

## IV.    THE REMAINDER OF PMC'S BRIEF MERELY REHASHES ITS PRIOR REJECTED ARGUMENTS

The remainder of PMC's brief is merely a rehash of its prior arguments relating to bifurcation and contract interpretation under Delaware law that the Court has already rejected on solid grounds.  Under this Court's Local Rules, these arguments cannot be raised on reconsideration because they merely "repackage familiar arguments to test whether the Court will change its mind."  *Brogdon v. Nat'l Healthcare Corp.*, 103 F. Supp. 2d 1322, 1338 (N.D. Ga. 2000).

### A.    Contract Interpretation Is an Issue for the Court Under Delaware Law

In arguing that the jury should decide what an ambiguous contract means, PMC ignores Delaware Supreme Court precedent, which states that the Court, not the jury, decides the meaning of an ambiguous contract.  *See Eagle Indus. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1233 (Del. 1997); *Klair v. Reese*, 531 A.2d 219, 222 (Del. 1987); *Capital Mgmt. Co. v. Brown*, 813 A.2d 1094, 1097 (Del. 2003).   As the Court correctly concluded, this precedent applies to proceedings in both Delaware Superior Court and Delaware Chancery Court.  *See Capital Mgmt.*, 813 A.2d at 1097 (affirming appeal from Delaware Superior Court and stating that if the contract had not expired, "the trial judge should have determined whether the terms in that contract were ambiguous, and if they were,

heard extrinsic evidence to determine what the parties intended those terms to mean"); *State Human Relations Comm'n ex rel Price v. Apartment Communities Corp.*, C.A. No. 05C-03-284, 2007 WL 3131787, at *3 (Del. Super. Oct. 26, 2007) (stating that "if the Court determines the general release is ambiguous, it will look at extrinsic evidence to ascertain the parties' intentions" and use extrinsic evidence to determine the meaning of the ambiguous contract provision); *ThoughtWorks, Inc. v. SV Investment Partners, LLC*, 902 A.2d 745, 752 (Del. Ch. 2006) ("[I]f the contract terms are ambiguous on their face, the court may consider parol evidence to determine the true meaning of the parties' intent when they entered into the contract.").

PMC's rehash of its prior arguments is unavailing because, as the Court correctly concluded, the Delaware Supreme Court has overruled the very precedent on which PMC relies. Order at 5. The new wrinkle in PMC's argument is that *Smith v. Berwin Builders* (which the Order correctly recognized was overruled by *Klair*) remains good law because it continues to be cited by Delaware courts, "most recently in October 2009." Mot. at 20. The only alleged support for PMC's argument is the citation to *Smith* found in *Coupe v. Resort Repairs, Inc.*, which did not even involve a jury trial. *Coupe* cited *Smith* for a proposition completely

unrelated to this case—that "Delaware law recognizes an implied builder's warranty of good quality and workmanship":

> Second, Defendant did not breach the contract because the replacement windows were installed in good quality and in a workmanlike manner. Delaware law recognizes an implied builder's warranty of good quality and workmanship. *Sachetta v. Bellevue Four, Inc.*, 1999 WL 463712, at *3 (Del. Super. June 9, 1999) (citing *Smith v. Berwin Builders, Inc.*, 287 A.2d 693, 695 (Del. Super. 1972)). This implied warranty arises by operation of law. *Marcucilli v. Boardwalk Builders, Inc.*, 2002 WL 1038818, at *4 (Del. Super. May 16, 2002).

> *Coupe v. Resort Repairs, Inc.*, C.A. No. 2006-12-213, 2009 WL 3288202 (Sussex Com. Pleas. Oct. 14, 2009).

*Coupe*'s citation to *Smith* on an unrelated point in no way supports PMC's argument that contract interpretation is a question for the jury under Delaware law.

In addition, having argued in its prior briefing that Delaware law controls, PMC now argues that this Court should ignore Delaware law merely because this case was brought in federal court. PMC's argument is incorrect. While it is true that federal law governs the Seventh Amendment analysis, state law still controls the issue of whether contract interpretation is decided by the court or the jury in a federal case. *See Odmark v. Mesa Ltd.*, 59 F.3d 1241, 1995 WL 413035, at *1 (5th Cir. June 19, 1995). In *Odmark*, the Fifth Circuit held that it was bound to apply Delaware law on this very issue, as follows:

> [The] argument that ambiguities in the meaning of the [contract] provisions should be resolved by a jury are unavailing in this respect, because Delaware law—by the terms of the agreement, the applicable law in its interpretation—treats matters of contract interpretation as questions of law.

*Id.*  PMC cites no precedent holding that the Seventh Amendment creates a jury trial right on questions of law.[3]  *See Ex Parte Peterson*, 253 U.S. 300, 309 (1920).

## B.    Bifurcation of the Contract Claim is the Most Sensible and Efficient Course for All Parties

PMC's patent infringement case is exceedingly complex.  It involves eight patent claims across four different patents that are asserted against numerous products.  The patents include a complicated specification that is almost 200 pages long and a convoluted prosecution history involving a family of more than 300 patent applications and multiple reexaminations.  Resolving the parties' claim construction disputes required more than 500 pages of analysis by the Special Master.

---

[3]    It is black letter Delaware law that the interpretation of an ambiguous contract is "a question of law not fact."  *Hennegan v. Cardiology Consultants, P.A.*, C.A. No. 07C-02-015 RBY, 2008 WL 4152678, at *2 (Del Super. Sept. 9, 2008); *Rhone-Poulenc Basic Chem. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992) ("The proper construction of any contract, including an insurance contract, is purely a question of law."); *Odmark*, 1995 WL 413035, at *1.  This rule applies to breach-of-contract actions brought in federal court.  *Odmark*, 1995 WL at 413035.

As the Court has already recognized, it makes sense to resolve the threshold contract issue first (*i.e.,* whether PMC even has standing to sue and, if so, to what extent) before delving into expert discovery, dispositive motions, pretrial preparation, and trial on such complex patent issues. At a minimum, there is a high likelihood that trying the contract issues first would significantly reduce the scope of the patent issues so that the Court will not waste its time (or the time of the parties and the jurors) trying claims over which PMC has no rights. At the very minimum, resolving the contract issue first will avoid a trial that involves six parties and combines distinct contract and patent issues that would present a daunting task for the Court and jury to try to decide in a single, consolidated trial.

## V. <u>CONCLUSION</u>

PMC's Motion for Reconsideration should be denied because it is not based on new evidence or intervening change in law, and there was no clear error or injustice in the Court's Order of November 18, 2009. Instead, PMC's Motion raises a new Seventh Amendment argument that it could have raised earlier but did not. In any case, there is no jury trial right on Gemstar's claims for equitable relief. In addition, the Court's decision to bifurcate the contract claim from an exceedingly complex patent case should not be disturbed because it is the most sensible and efficient course for all parties involved.

Dated: December 21, 2009

Respectfully submitted,

Duane Morris, LLP

/s/ Matthew C. Gaudet
L. Norwood Jameson (#003970)
Matthew C. Gaudet (#287789)
700 Atlantic Center Plaza
1180 West Peachtree Street
Atlanta, GA  30309
Telephone:  (404) 253-6900
Facsimile:  (404) 253-6901
*Counsel for Defendants*
*Scientific-Atlanta, Inc.*
*and PowerTV, Inc.*

*Of Counsel*:
Matthew D. Powers (*pro hac vice*)
Jared Bobrow (*pro hac vice*)
Joseph H. Lee (*pro hac vice*)
Weil, Gotshal & Manges LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065
Telephone:  (650) 802-3000
Facsimile:  (650) 802-3100

Douglas W. McClellan (*pro hac vice*)
Christian J. Hurt (*pro hac vice*)
Weil, Gotshal & Manges LLP
700 Louisiana, Suite 1600
Houston, TX  77002
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511

## CERTIFICATE OF COMPLIANCE

I hereby certify that this pleading has been prepared in compliance with Northern District of George Local Rule 5.1 B.  This pleading has been prepared in Times New Roman 14 point.

Respectfully submitted, this 21st day of December, 2009.

Duane Morris, LLP

/s/  Matthew C. Gaudet
L. Norwood Jameson (#003970)
Matthew C. Gaudet (#287789)
700 Atlantic Center Plaza
1180 West Peachtree Street
Atlanta, GA  30309
Telephone:  (404) 253-6900
Facsimile:  (404) 253-6909
*Counsel for Defendants*
*Scientific-Atlanta, Inc.*
*and PowerTV, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2009, a copy of SCIENTIFIC-ATLANTA'S RESPONSE TO PLAINTIFF PMC'S MOTION FOR RECONSIDERATION, OR, ALTERNATIVELY, FOR CERTIFICATION UNDER 28 U.S.C. § 1292(b) was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all counsel of record.

/s/  Matthew C. Gaudet
Matthew C. Gaudet
Georgia Bar No. 287789